**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Cullen Horace WILLIAMS,
Defendant-Appellant.**

No. 83–3106
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

April 2, 1984.

Arthur N. Eggers, Tampa, Fla., Andrew J. Ekonomou, Atlanta, Ga., for defendant-appellant.

Judy Rice Hoyer, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Cullen Horace Williams appeals his conviction for mail fraud in connection with the filing of a false insurance claim. The gravamen of his appeal is that the district court failed to give the requested jury instruction on good faith. We affirm.

## I.

In 1977 Williams was involved in the earth moving business near Tampa, Florida. On Monday, November 7, 1977, he reported the disappearance of his John Deere front-end loader. Shortly thereafter he reported the theft to his insurance company, and received a cash settlement of $18,900. In January 1978 a cattle thief, Carter Bush, was arrested. In return for his cooperation with state and federal law enforcement agencies and information on a number of crimes he committed with others from 1973 to 1978, he received a ten year probated sentence and was required to make restitution for the cattle theft. He testified that he had known Williams since about 1973 when he owned an auto repair shop and did some work for Williams. They knew each other's families and also had some mutual friends. He testified that Williams called him (about a week before Williams' front-end loader disappeared) and told him that "[h]e had a dozer he wanted to disappear" so he could collect the insurance on it and get a new one. When Bush got to Tampa, Williams told him he wanted him to take the loader, not the dozer. Bush and his cohorts took the loader on a Saturday afternoon and transported it to a piece of property outside Perry, Florida, where they left it. In May 1978, he took law enforcement

officers to the property and the loader was recovered. The loader had no VIN (vehicle identification number) plate because Bush had taken it off and put it on a stolen Florida Department of Transportation loader.

Williams was indicted on two counts of mail fraud in violation of 18 U.S.C. § 1341. Williams pled not guilty and was tried by a jury before Judge Carr. The jury was unable to reach a verdict, and the district court declared a mistrial. The case was transferred to Judge Hodges, and a second jury trial resulted in a verdict of guilty on both counts. Williams was sentenced to two concurrent four-year sentences and filed a notice of appeal the same day.

Williams did not testify. His defense was (1) that Bush's testimony was not reliable; (2) that the mailings did not occur on the days alleged in the indictment; and (3) that he would not have set up or participated in the alleged scheme because he lost money due to the theft. With respect to the third item, Williams' wife testified that when they got the $18,900 check from the insurance company, they signed it over to the party who held a lien on the front-end loader, and ultimately only received $2,300.

## II.

The issues on appeal concern whether or not the district court erred when it refused to give Williams' instruction on the good faith defense to charges of mail fraud. Judge Carr instructed the jury that if they believed that Williams did not ask Bush to steal the loader, then he submitted the insurance claim form in good faith and should be acquitted. He also instructed the jury that if they believed that neither Williams nor his company benefitted from the theft of the tractor, this could be considered along with the issue of intent to defraud. In the second trial, Judge Hodges gave no instruction on good faith.

## A.

■ A district court's refusal to give a requested instruction constitutes reversible error if and only if the instruction (1) is correct; (2) is not substantially covered by other instructions which were delivered; and (3) deals with some point in the trial so important that the failure to give this instruction seriously impairs the defendant's ability to defend himself. *United States v. Stone,* 702 F.2d 1333, 1339 (11th Cir.1983); *United States v. Gaines,* 690 F.2d 849, 855 (11th Cir.1982). The defendant is entitled to have the court instruct the jury on his defense theory if the theory has foundation in evidence and legal support. *United States v. Terebecki,* 692 F.2d 1345, 1351 (11th Cir.1982). To decide whether there is a proper evidentiary foundation, the evidence must be viewed in the light most favorable to the accused. *United States v. Lewis,* 592 F.2d 1282, 1286 (5th Cir.1979).[1] However, "[c]alling a proposed instruction a 'theory of defense' does not automatically require that it be given in those words. If the instruction does not concern factual issues properly before the jury or if it is otherwise confusing, it need not be given at all." *United States v. Malatesta,* 583 F.2d 748, 759 (5th Cir.), *cert. denied,* 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1978).

■ One of the elements of the crime of mail fraud is proof of specific intent to defraud. *United States v. Goss,* 650 F.2d 1336, 1341 (5th Cir. Unit A 1981). Good faith is a complete defense to the element of intent to defraud. *Id.* at 1344–45; *Lewis,* 592 F.2d at 1286. The issue becomes, therefore, whether there was an underlying evidentiary foundation to support Williams' requested instruction on good faith. *Goss,* 650 F.2d at 1344–45.

Williams relies on several cases wherein the convictions were reversed when a good faith instruction was not given. In *United States v. Goss, supra,* the defendant was allegedly involved in a scheme whereby he sold a low quality residuum mixture, repre-

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

senting it to be crude oil, to increase his profits. However, there was evidence presented that such a mixture could have been considered crude oil as the term was understood in the oil industry. *Id.* at 1345. Therefore, the court found that there was an evidentiary basis for the good faith defense, and it was error to not give the requested instruction. *Id.*

*United States v. Lewis, supra,* concerned a case where the defendant was charged with uttering a Veterans Administration check with a forged endorsement. Lewis testified that an individual had given him the check telling him to cash it, take the money out owed to him, and return the remaining amount to her. Thus, Lewis' defense was that he thought that the person giving him the check had the authority to cash it and could delegate this authority to him. He did not deny signing and cashing the check. The court noted that an instruction on good faith should be given if there "was an underlying foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *Id.* at 1286 (citations omitted). *See also United States v. Diamond,* 430 F.2d 688, 697 (5th Cir.1970).

In all the above cases, the defendants did not deny they committed the underlying acts. Instead, they denied that they made the representations with intent to defraud or knew that they were false. Here, Williams did not testify. Instead, his primary argument to the jury and on appeal is that he made no money on the theft, and, therefore, he would not have asked to have the tractor stolen. The government, however, is not required to prove that the scheme succeeded to sustain a conviction under the mail fraud statute. *United States v. Scott,* 701 F.2d 1340, 1347 (11th Cir.1983). There was conflicting evidence presented on whether or not Williams did indeed benefit from the theft. A jury instruction on the benefit or lack of benefit Williams received from the theft may have only been confusing and misleading. *See id.* at 1347–48.

Williams also relies on *United States v. Curry,* 681 F.2d 406 (5th Cir.1982), for the proposition that Williams' failure to testify is irrelevant because good faith can be established by circumstantial evidence. *Id.* at 416 n. 25. However, Curry was chairman of a political action group and was accused of embezzling the group's money and mailing false documents to the state election committee to conceal this theft of funds. *Id.* at 408–09. The court found that the state election act was ambiguous in defining the term "contribution" and the jury could conceivably believe that Curry did not realize the money he was receiving qualified as "contributions." *Id.* at 416–17. Even though Curry did not testify, there was evidence that the statute was misleading and other persons had been similarly confused by the wording of it. *Id.* at 417.

Williams has presented a good *argument* for lack of motivation, but no real *evidence* of lack of intent. In all the cases wherein a conviction was reversed due to the failure to give a good faith instruction, there was evidence presented which, if believed by the jury, would render the defendant innocent because he did not have the intent to defraud or to make false statements. However, in the instant case the only way the jury could acquit Williams would be if they found that he did not ask Bush to steal the loader. As noted by the government, this is not a "good faith defense," but merely a plea of not guilty. Judge Hodges concurred with this interpretation when he refused to give the good faith instruction. Therefore, Williams' arguments to the jury were adequately covered by the court's charge on the presumption of innocence and the government's burden of proof. *See United States v. Malatesta,* 583 F.2d at 759. Accordingly, it was not error to refuse Williams' instruction on good faith.

### B.

Williams also argues on appeal that the district court erred in refusing to give his requested instruction by not following the doctrine of the law of the case.

The law of the case doctrine provides:

A decision of a legal issue or issues by an appellate court ... must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless [1] the evidence on a subsequent trial as substantially different, [2] controlling authority has since made a contrary decision of the law applicable to such issues, or [3] the decision was clearly erroneous and would work a manifest injustice.

*Baumer v. United States,* 685 F.2d 1318, 1320 (11th Cir.1982), *quoting White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967). The doctrine is based upon the sound policy that litigation should come to an end. *White,* 377 F.2d at 431. It protects against the agitation of settled issues and assures obedience of lower courts to the decisions of appellate courts. *Id.;* 1B Moore's Federal Practice ¶ 0.404[1] (1983).

██ Almost all cases discussing the "law of the case" doctrine generally refer to it as applying to decisions made by a court of appeals in a prior appeal of the same case. *See United States v. Robinson,* 690 F.2d 869, 872 (11th Cir.1982). In the instant case, Williams would like the law of the case to apply to Judge Carr's decision to give the jury instruction in the first trial (which ended in a mistrial when the jury was unable to reach a verdict). Williams alleges that the evidence presented in the first trial was substantially the same as that presented in the second trial, and Judge Hodges was required to give the same jury instructions.

At the trial court level, the doctrine of the law of the case has been described as "little more than a management practice to permit logical progression toward judgment." 1B Moore's Federal Practice ¶ 0.404[1], p. 118. It is recognized that when cases are transferred from one judge to another judge in the same court, the transfer should not be treated as an opportunity to relitigate all the questions decided by the first judge. *Id.* at ¶ 0.404[4.–2], p. 127. However, the subsequent judge should never be bound by an erroneous ruling of law. *Id.* Only one case has been discover-

ed where the potential binding effect of a district court's decision was analyzed under the "law of the case" doctrine. In *United States v. Horton,* 622 F.2d 144, 148 (5th Cir.1980), the appellate court concluded that the district court was not bound by its earlier ruling on a motion for summary judgment. *See also Compton v. Societe Eurosuisse, S.A.,* 494 F.Supp. 836, 838–39 (S.D. Fla.1980). Therefore, it is questionable whether or not the law of the case doctrine is even properly raised in this case.

Even if the law of the case doctrine applies, the doctrine is flexible, and a court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court. While it cannot be said that Judge Carr was incorrect in giving the good faith instruction, some deference must be given to Judge Hodges' view of the evidence as the case was presented before him. Since Judge Hodges' finding that no real evidence of good faith was presented in the case is supported by the record, he did not err when he gave different jury instructions from those given by Judge Carr.

AFFIRMED.