**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Linda CEBIAN, Defendant-Appellant.**

No. 85–8083
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Oct. 18, 1985.

Robert G. Fierer, Atlanta, Ga., for defendant-appellant.

Wilmer Parker III, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before FAY, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

In May 1984 a grand jury indicted Linda G. Cebian on two counts of conspiracy to possess cocaine with intent to distribute, possession of cocaine with intent to distribute, and distribution of cocaine in violation of 21 U.S.C.A. §§ 841(a)(1) and 846. Cebian sold some 642 grams of cocaine to undercover agents in the parking lot of the Hilton Hotel in Cobb County, Georgia, for $30,000. She was arrested, tried and ultimately convicted on both counts, and sentenced to two concurrent ten year sentences followed by a special parole term of three years. She appeals from that judgment here.

At trial, Cebian raised a single defense to the drug charges: that she was unable to form the requisite intent to break the law knowingly and willfully because she suf-

fered at the time of the sale from Post-Traumatic Stress Disorder (PTSD), a psychological disorder common among battered women. For a year and a half before the drug transaction, the defendant was physically and psychologically abused by her boyfriend and then husband, Steven Cebian, himself a cocaine dealer. Her nose was broken twice, her jaw, fingers and ribs fractured and her spleen ruptured by beatings. At various times the defendant was struck with a machete, burned with cigarettes and a propane torch, handcuffed to a bed, locked in a closet for 24 hours and forced to have sex with another woman. At trial, a clinical psychologist testified that Cebian was suffering from PTSD at the time of the crime, though the battering stopped when her husband died of a heart attack some six months before the incident. The prosecution countered with evidence, which the jury apparently accepted, that despite her illness, the defendant knowingly and voluntarily sold cocaine in violation of the law.

The sole issue on appeal is whether the trial judge erred in refusing to give Cebian's requested instruction number 23 on "diminished capacity" to the jury. That instruction read:

> When a defendant is charged with crimes which requires [sic] that a specified intent or mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom, if, at the time when the alleged crime was committed the Defendant was suffering from some abnormal mental or physical condition which prevented her from forming the specific intent which is an essential element of the crime with which she is charged.
>
> If, from all the evidence, you have reasonable doubt whether the Defendant was capable of forming such specific intent, you must give the Defendant the benefit of the doubt and find that she did not have the specific intent to commit the offense with which she is charged.

Brief for Appellant, Appendix A. The trial judge declined to give this instruction because it did little more than restate her charge on the element of "specific intent."[1] That instruction, given to the jury at trial, read as follows:

> Ladies and gentlemen, the crimes charged in counts 1 and 2 of the indictment are serious crimes which require proof of specific intent before the defendant can be convicted. Specific intent as the term implies means more than the general intent to commit an act. To establish specific intent, the Government must prove that the Defendant willfully and willingly did an act which the law forbids purposely intending to violate the law.
>
> Such intent may be derived—excuse me—may be determined from all the facts and circumstances surrounding the case.
>
> You will recall I have defined the words knowingly and willfully for you, and I will do that once again.
>
> The word knowingly, as that term is used, means that an act is done voluntarily and intentionally and not because of mistake or accident.

---

1. The judge said, "I question whether it [number 23] is necessary and also whether it would be confusing. Of course, I am going to charge on the elements of the crimes charged, and those elements include the element of willfulness, and it seems to me that is the focal point. This is what we are really talking about, and if you go on to talk about what diminished capacity is, it could be mistakenly interpreted as injecting an additional element into the crime." Record at 277.

She also said, "I think that clarity is promoted by keeping the jury's focus on the elements of the crime. One of these elements is specific intent. All we are talking about when you talk about diminished capacity is the alleged absence of specific intent.... All I would be doing would be giving an example to the jury of one way there can be an absence of specific intent, and my view in doing so is I would not be augmenting the jury's understanding of the relevant legal principles. That is the reason I am not going to do it." *Id.* at 282–83.

The word willfully means that an act is committed voluntarily and purposefully with the specific intent to do something the law forbids, that is to say, with bad purpose either to disobey or disregard the law.

Record at 336–37.

We agree with the trial court that its instruction was sufficient. In *United States v. Williams*, 728 F.2d 1402, 1404 (11th Cir.1984), we set out the relevant standard for review:

> A district court's refusal to give a requested jury instruction constitutes reversible error if and only if the instruction (1) is correct; (2) is not substantially covered by other instructions which were delivered; and (3) deals with some point in the trial so important that the failure to give this instruction seriously impairs the defendant's ability to defend himself. [Citations omitted.]

We need go no further than to hold that appellant's proposed instruction number 23 was "substantially covered" by the trial court's jury charge on specific intent.

Appellant urges that two separate instructions are required because "[t]he defendant is entitled to have the court instruct the jury on his defense theory if the theory has foundation in evidence and legal support." *Id.* This is true enough where the defense theory is analytically distinct from the elements of the crime about which the jury is routinely instructed. But that is not the case here. On the contrary, appellant's PTSD theory simply represents a new approach to an old element; at its root, her claim is still that she lacked the specific intent to commit the crime with which she is charged. The defendant is entitled to put on evidence, psychological or otherwise, to show why this might be true. But the PTSD claim is a gloss on the specific intent issue that does not, in the trial court's good discretion, require a separate and distinct jury charge.

The conviction of Linda G. Cebian is AFFIRMED.