**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Anthony FERNANDEZ,
Defendant–Appellant.**

No. 86–5991.

United States Court of Appeals,
Eleventh Circuit.

Feb. 19, 1988.

---

Theodore J. Sakowitz, Federal Public Defender, (Court-appointed), John Bergendahl, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Charles V. Senatore, Linda Collins Hertz, Donna A. Bucella, Harriet R. Galvin, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, Chief Judge, KRAVITCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

John Anthony Fernandez appeals his jury convictions for threatening a federal officer engaged in the discharge of his duty in violation of 18 U.S.C. § 1503 and assaulting a federal officer on account of the performance of his official duties in violation of 18 U.S.C. § 111. We affirm both convictions.

I.

On May 8, 1986, Ronald Shur, an Assistant United States Attorney for the Southern District of Florida, represented the government at the sentencing of appellant's brother, Felipe Fernandez, who had been convicted of drug offenses. The appellant was present in the courtroom when his brother was sentenced to nine years imprisonment.

After the sentencing, Shur and Louis Casuso, counsel for one of the co-defendants, remained in the courtroom for a few minutes. While talking with Casuso, Shur noticed the appellant standing outside the courtroom looking in through the courtroom door window. He became concerned and asked Casuso to accompany him out of the courthouse. As Shur and Casuso left the courthouse, Shur saw the appellant standing by the exit staring at him. He told Casuso that the appellant seemed to be following him. Shur next noticed the appellant as he and Casuso were walking to a nearby parking lot to pick up Casuso's car. The appellant was standing on the street corner staring at Shur. When Shur pointed this out, Casuso became concerned and offered Shur a ride to the United States Attorney's office. After deciding that it

would be safe to walk to his office, as it was mid-morning and he was on a crowded public street, Shur declined Casuso's offer and began the six block walk to his office.

As Shur walked south on Miami Avenue, Casuso saw the appellant running after Shur. Another Assistant United States Attorney, Edward Nucci, who was walking north on Miami Avenue toward the courthouse, also observed the appellant chasing Shur. Approximately one block from the courthouse, the appellant caught up to Shur, bumped into him, and asked, "Are you the public prosecutor?" When Shur replied that he was, the appellant said he wanted to talk to him. Shur told the appellant, who was standing about one foot away, that he would not talk to him, but suggested that he relay any messages through his brother's attorney. The appellant then stated, "You're not going to talk to me? My brother is innocent. Saul Perez went free and my brother is going to jail. You better watch your back."

Growing increasingly agitated and angry, the appellant then shouted at Shur, "You're not going to talk to me? You better watch your back." At this point, the two were standing so close that appellant's face was inches away from Shur's, and his chest was touching Shur's arm. Shur, who thought that if he moved the appellant would hit him, then stated, "Are you threatening me, because I'm an Assistant United States Attorney? ... If you are threatening me, that's a crime and you can go to jail for it." Appellant responded, "I'm not threatening you, but you had better watch your back. You better get somebody to protect you." The appellant then backed away and began shouting profanities at Shur and repeating that he had better "watch [his] back" and get someone to protect himself.

A few seconds later, Shur saw Assistant United States Attorney Daniel Cassidy walking towards him from the courthouse. Shur told Cassidy that the appellant, who was now standing approximately two feet away from Shur, had pushed and threatened him. Cassidy yelled at the appellant to leave and he complied. After the appel-

lant's departure, Casuso drove up and asked Shur if he was all right; Shur replied that the appellant had threatened him. Shaken and upset, Shur then walked back to his office with Cassidy and reported the incident.

Later that day, FBI agents went to the appellant's home to arrest him. After the appellant admitted that he had been at the courthouse that day, the agents identified themselves and told the appellant that he was under arrest for assaulting a federal officer. Appellant responded, "It must be the Shur thing." En route to the detention facility, the appellant, referring to Shur, said, "I hope the son of a bitch is happy for what he has done."

On May 14, 1986, a grand jury in the Southern District of Florida returned a two count indictment charging the appellant with (1) knowingly and intentionally, by threats and force, endeavoring to influence, intimidate and impede Ronald Shur in the discharge of his duties as an Assistant United States Attorney, in violation of 18 U.S.C. § 1503; and (2) knowingly and willfully forcibly assaulting, impeding, intimidating and interfering with Shur on account of the performance of his official duties, in violation of 18 U.S.C. § 111. Appellant was tried before a jury and, after his motion for a judgment of acquittal based on insufficient evidence was denied, he was convicted on both counts. On November 18, 1986, appellant was sentenced to two concurrent 30 month terms of incarceration on each count. This appeal followed.

II.

The appellant argues that the district court should have granted his motion for judgment of acquittal due to the government's failure to prove essential elements of the charged offenses. More specifically, the appellant contends that, as to the § 1503 charge, the government failed to prove that Shur was engaged in "the discharge of his duties" when appellant threatened him, and as to the section 111 charge, the government failed to establish

that the appellant forcibly assaulted Shur. Both of these contentions are without merit.

### A. Sufficiency of the Evidence under 18 U.S.C. § 1503.

Section 1503 provides, in pertinent part:

> Whoever corruptly, or by threats or force ... endeavors to influence, intimidate, or impede any ... officer in or of any court of the United States ... in the discharge of his duty ... shall be fined not more than $5,000 or imprisoned not more than five years or both.

The appellant claims that the government failed to establish that Shur was engaged in the discharge of his duty when the appellant assaulted him because *United States v. Felipe Fernandez*, the case against appellant's brother, was no longer pending when the assault occurred.

Initially, we note that the appellant offers no support for his argument that in order to prove a violation of section 1503 against a United States Attorney, the government must establish that the attorney was engaged in the discharge of his duty in a pending judicial proceeding. Although neither the legislative history nor case law under section 1503 offers any guidance on the meaning of the phrase "discharge of his duty," cases decided under an analogous statute that imposes punishment for assaulting a federal officer engaged in the performance of his official duty,[1] indicate that the phrase "discharge of his duty" should not be interpreted as narrowly as the appellant insists. *See United States v. Streich*, 759 F.2d 579, 584 (7th Cir.) (test is whether officer is acting within scope of what he is employed to do, or is engaging in a personal frolic of his own), *cert. denied*, 474 U.S. 860, 106 S.Ct. 172, 88 L.Ed. 2d 142 (1985); *United States v. Boone*, 738 F.2d 763 (6th Cir.) ("The parameters of the statutory requirement that a federal officer covered by the act must be engaged in the performance of his official duties are inherently fluid."), *cert.*

*denied*, 469 U.S. 1042, 105 S.Ct. 528, 83 L.Ed.2d 416 (1984); *United States v. Stephenson*, 708 F.2d 580 (11th Cir.1983) (FBI agent acting in her official capacity when she was assaulted on her way to work).

██ We need not decide, however, whether the appellant's interpretation of the phrase "discharge of his duty" is correct, because even if we were to accept his argument that a pending judicial proceeding is necessary to support a conviction under section 1503, we do not agree that *United States v. Felipe Fernandez* was no longer pending when the appellant threatened Shur. The appellant assumes that Shur's duties with respect to his brother's case ceased when the sentencing proceeding ended. This assumption, however, is incorrect, as Shur was still responsible for representing the government should the appellant's brother take the available post-sentence steps of filing an appeal or making a motion to reduce his sentence. Although appellant's brother had not taken either action at the time of the attack, he still had time to file a notice of appeal, *see* Fed.R. App.P. 4(b), and a motion to reduce his sentence, *see* Fed.R.Crim.P. 35(b). Under these circumstances, we cannot agree with the appellant that the case against Felipe Fernandez was no longer pending at the time he threatened Shur.

At trial, Shur testified that the appellant, angry over the sentence his brother had received, told Shur that he had better watch his back and get someone to protect himself. The testimony of Casuso, Nucci, and Cassidy corroborated Shur's account of what happened that morning. Viewing this evidence in the light most favorable to the government, the jury could have reasonably found that the appellant was guilty beyond a reasonable doubt of threatening Shur in the discharge of his duty. *See United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).[2]

---

1. The appellant was also charged under this statute, 18 U.S.C. § 111. *See infra* section II B.
2. The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982),

adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

*B. Sufficiency of the Evidence under 18 U.S.C. § 111.*

■ Section 111 provides, in pertinent part:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in Section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

The appellant argues that the evidence presented at his trial was insufficient for the jury to find that he *forcibly* assaulted Shur. In so arguing, the appellant correctly states that "the concept of the use of force contemplates and requires more than a person merely verbalizing or implying threats involving the future use of force." *See United States v. Cunningham,* 509 F.2d 961, 963 (D.C.Cir.1975); *United States v. Bamberger,* 452 F.2d 696 (2d Cir.1971), *cert. denied,* 405 U.S. 1043, 92 S.Ct. 1326, 31 L.Ed.2d 585 (1972). The appellant's argument, however, ignores the fact that he did more than "merely verbaliz[e] or imply[] threats involving the future use of force;" according to Shur's uncontradicted testimony the appellant also chased Shur down the street and bumped into him. The word "forcibly" in section 111 means only that some amount of force must be used. *United States v. Sommerstedt,* 752 F.2d 1494, 1496 (9th Cir.) (evidence that defendant jolted Assistant United States Attorney's arm and shoulder was sufficient to support conviction under section 111), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985); *United States v. Mathis,* 579 F.2d 415, 418 (7th Cir.1978) (evidence that accused used some quantum of force or threat of force is sufficient to support conviction under section 111). Thus, a reasonable jury, viewing the evidence in the light most favorable to the government, could have found that the appellant forcibly assaulted Shur on account of the performance of his official duties, in violation of 18 U.S.C. § 111. *See United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

We conclude, therefore, that there was sufficient evidence to sustain the convictions on both counts.

### III.

The appellant's final argument is that the district court erred in not giving a proposed jury charge on the appellant's right to freedom of speech. The text of the proposed instruction is as follows:

Sections 1503 and 111, under which the Defendant is charged, are not meant to sweep in all harassment of government officers involving verbal pronouncements made to them. The Defendant has every right to express to a government officer, however rudely, his displeasure in how that officer may or may not be handling certain matters of interest to the Defendant. If you find in this case that the Defendant, JOHN ANTHONY FERNANDEZ, was merely verbalizing his displeasure with Mr. Shur, as it relates to Mr. Shur's prosecution of the Defendant's brother, then the charges have not been proven beyond a reasonable doubt and you must find the Defendant not guilty.

■ A defendant is entitled to have the court instruct the jury on his defense theory only if that theory has an evidentiary foundation and the requested instruction presents a cognizable legal defense. *United States v. Silverman,* 745 F.2d 1386, 1399 (11th Cir.1984); *United States v. Williams,* 728 F.2d 1402, 1404 (11th Cir. 1984); *United States v. Terebecki,* 692 F.2d 1345, 1351 (11th Cir.1982). To decide whether there is a proper evidentiary foundation, the evidence must be viewed in a light most favorable to the appellant. *Williams,* 728 F.2d at 1404. Even under this generous standard, however, there was no reasonable view of the evidence presented at appellant's trial to support a finding that he was merely exercising his first amendment rights. Thus, the district court properly refused the free speech instruction. *See United States v. Costello,* 760 F.2d 1123, 1127 (11th Cir.1985) (trial court

cannot instruct jury on issue where there is no evidence to support it).

AFFIRMED.